SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized).

### IMO Proposed Quest Academy Charter School of Montclair Founders Group (A-12-12) (070972)

**Argued September 9, 2013 -- Decided December 16, 2013**

**LaVECCHIA, J., writing for a unanimous Court.**

In this appeal, the Court considers the standard of review applicable to the Commissioner of Education's decision to deny a charter school application and the propriety of that decision.

The Charter School Program Act of 1995 (the Act), N.J.S.A. 18A:36A-1 to -18, authorizes the establishment of charter schools in New Jersey. The Act charges the Commissioner of Education (Commissioner) with the responsibility to establish a program to "provide for the approval and granting of charters to charter schools pursuant to [the Act]." N.J.S.A. 18A:36A-3. The application process is governed by the Act, see N.J.S.A. 18A:36A-4, -4.1, -5, and implementing regulations, see N.J.A.C. 6A:11-2.1. Each charter school application must be submitted not only to the Commissioner, but also to the local board of education for a recommendation to the Commissioner. The Commissioner has the "final authority to grant or reject a charter application." N.J.S.A. 18A:36A-4(c). Although the statutory and regulatory programmatic requirements provide no guidance to the Commissioner on how to assess an application, case law requires the Commissioner to (1) avoid segregation resulting from the grant of a charter school application and (2) evaluate the impact that loss of funds would have on the local school district's ability to deliver a thorough and efficient education. In re Grant of Charter Sch. Application of Englewood on the Palisades Charter Sch. (Englewood on the Palisades II), 164 N.J. 316 (2000).

On October 15, 2010, Tracey Williams, on behalf of a group of founders, submitted an application to the Commissioner to open Quest Academy, a proposed charter high school in Montclair. On December 6, 2010, Williams received an email response from the State Department of Education (Department) stating that certain sections of the application were incomplete, insufficient, or unclear, pointing out specific deficiencies in the application, and providing an opportunity to address the deficiencies through the submission of further information. Also on December 6, 2010, Dr. Frank Alvarez, Superintendent of the Montclair Public Schools, provided the Commissioner comments on the Quest Academy application on behalf of the local board of education. Dr. Alvarez addressed the negative financial impact that the proposed charter school would have on the Montclair School District and criticized the application for containing inadequate and unclear information on course requirements, graduation requirements, and curriculum development. Quest Academy submitted additional materials on December 14, 2010. On January 18, 2011, the Commissioner sent a brief, form-like letter to Williams stating that, "based on recommendations and my review, I am denying your request because of the deficiencies in your application." Although there was no further detail regarding the deficiencies, the letter informed Williams that the Department had additional information regarding her application and invited her to arrange an appointment with staff to review the additional information and to register for a Department training program on preparing charter school applications.

Williams filed a notice of appeal with the Appellate Division on February 24, 2011. On June 6, 2011, the Commissioner submitted an amplification of reasons for the denial to the Appellate Division. The Commissioner characterized Quest Academy's education plan as weak and discussed content and programmatic deficiencies, including that Quest Academy failed to present a comprehensive and fully integrated educational program and that its strategies were neither connected to, nor supportive of, the proposed educational program. The Commissioner added that, from her own experience, stand-alone charter high schools were particularly difficult to open and operate successfully. She also expressed concern that a charter school might interfere with the existing desegregation order that applies to the Montclair public schools. Finally, the letter cited criticisms voiced by Dr. Alvarez and community members who had written unsolicited letters of opposition to the proposed charter school. The Appellate Division affirmed the Commissioner's denial. The appellate panel stated that, because the Commissioner did not act in a quasi-judicial capacity, it did not review the Commissioner's decision under the substantial-credible-

evidence standard, but rather under the standard of whether the decision is arbitrary, capricious, or unreasonable. The panel found that the Commissioner's denial of Quest Academy's application was not arbitrary, capricious, or unreasonable. The Court granted Williams's petition for certification. 212 N.J. 288 (2012).

**HELD**: The arbitrary, capricious, or unreasonable standard of review is applicable to the Commissioner's decision to grant or deny a charter school application. The Commissioner's decision to deny Quest Academy's charter school application was amply supported by the record and was not arbitrary, capricious, or unreasonable.

1. Because the Act does not confer a right to an administrative hearing for charter school applications, applicants cannot claim the right to a quasi-judicial administrative hearing as a "contested case" under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15. However, that does not end all inquiry into the nature of the proceedings before the Commissioner. The labels of "quasi-judicial" and "quasi-legislative" typically are used to determine whether an agency is obligated to provide an administrative adjudicative hearing, regardless of whether the matter would merit the designation of a "contested case" under the APA. If the matter centers on the resolution of disputed adjudicative facts, if the parties are adverse, or if credibility determinations must be made, more formal adjudicatory-type proceedings must be provided (hence the quasi-judicial designation). The quasi-judicial and quasi-legislative labels have limits to their usefulness, however, because agencies must retain the ability to provide various informal, flexible procedures for determining certain issues that may not fit easily into either characterization. Importantly, the labels do not result in a meaningful difference in the role played by judicial review of administrative determinations. (pp. 17-20)

2. Reflecting the need to respect agency action taken pursuant to authority delegated by the Legislature, an appellate court may only reverse an agency decision if it is arbitrary, capricious, or unreasonable. In other words, a court may intervene when it is clear that the agency action is inconsistent with its mandate. That standard is applicable to administrative agency actions regardless of whether they are quasi-legislative or quasi-judicial. In addition, it is inarguable that the arbitrary, capricious, or unreasonable standard requires that the administrative decision be supported by the evidence in the record. (pp. 20-23)

3. The Commissioner's decision to deny Quest Academy's application was amply supported by the record. The Court does not second guess the educational judgments expressed in the Commissioner's amplification. Moreover, the analysis provided by Dr. Alvarez, which is required by the Act, was properly included in the record and was appropriately part of the Commissioner's determination. It was also appropriate for the Commissioner to consider the existing desegregation order pursuant to Englewood on the Palisades II. Finally, the Court finds no error in the Commissioner's consideration of unsolicited letters from local citizens or her reliance on her own expertise in assessing the overall viability of the proposed charter school. Case law has recognized the value that administrative expertise can play in making predictive or judgmental determinations. The Commissioner's decision demonstrates a thoughtful and thorough weighing and judgment of the merits of Quest Academy's application and does not warrant judicial intervention. (pp. 23-27)

4. Rule 2:5-1(b) permits the filing of an amplification of reasons after an appeal has been filed and no objection was raised on the basis of the Rule's time frames for such submissions. In addition, the Court accepts the Commissioner's explanation for the manner of her initial response to the application. Although the letter of denial did not detail the application's deficiencies, it offered instead a face-to-face meeting to review the application in detail. In reviewing a complex proposal for a charter school, there is a benefit to offering a discussion, instead of a written cataloguing, of mistakes or deficiencies in the application that has been rejected. The Court does not fault the Commissioner for choosing a dialogue involving constructive criticism as her preferred approach for producing approvable applications when resubmitted. (pp. 27-28)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER, JUSTICES ALBIN and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE LaVECCHIA's opinion.**

IN THE MATTER OF THE
PROPOSED QUEST ACADEMY
CHARTER SCHOOL OF MONTCLAIR
FOUNDERS GROUP.

Argued September 9, 2013 – Decided December 16, 2013

On certification to the Superior Court,
Appellate Division.

Michael J. Confusione argued the cause for
appellant Tracey Williams a member of Quest
Academy Charter School of Montclair Founders
Group (Hegge & Confusione, attorneys).

Michelle Lyn Miller, Assistant Attorney
General, argued the cause for respondent The
Commissioner of Education (John J. Hoffman,
Acting Attorney General; Lewis A.
Scheindlin, Assistant Attorney General, of
counsel; Diana C. Sierotowicz and Geoffrey
N. Stark, Deputies Attorney General, on the
briefs).

JUSTICE LaVECCHIA delivered the opinion for the Court.

The Charter School Program Act of 1995 (the Act), L. 1995,
c. 426, §§ 1 to 18 (codified as amended at N.J.S.A. 18A:36A-1 to
-18), authorizes the establishment of charter schools in New
Jersey. See N.J.S.A. 18A:36A-2 (finding that charter schools
"can assist in promoting comprehensive educational reform" and

that their establishment "is in the best interests of the students of this State"). The Act charges the Commissioner of Education (Commissioner) with the responsibility to establish a program to "provide for the approval and granting of charters to charter schools pursuant to [the Act]." N.J.S.A. 18A:36A-3. The application process is governed by the Act, see N.J.S.A. 18A:36A-4, -4.1, -5, and implementing regulations, see N.J.A.C. 6A:11-2.1. Review of applications is conducted in accordance with prescribed timing requirements that promote batched reviews tied to school cycles. See N.J.A.C. 6A:11-2.1(b)(5), -2.1(f). Ultimately, the Commissioner has the "final authority to grant or reject a charter application." N.J.S.A. 18A:36A-4(c); see also N.J.A.C. 6A:11-2.1(a).

In this matter, petitioner is one of the founders of the proposed Quest Academy Charter School of Montclair (Quest Academy), which sought licensure pursuant to N.J.S.A. 18A:36A-4 to operate as a charter school for high school students. The Commissioner denied the application in a writing that was short on detail with respect to the application's deficiencies. Instead, an offer to meet and discuss the application's shortcomings was extended, as well as the opportunity to participate in a training program for preparing an application for the upcoming application deadline. Following petitioner's filing of a notice of appeal to the Appellate Division, the

2

Commissioner issued a written amplification of reasons for denial of the application. The Appellate Division upheld the Commissioner's action on the grounds that the decision was not arbitrary, capricious, or unreasonable.

We granted certification to consider petitioner's claim that the Appellate Division misconstrued the standard of review applicable to the Commissioner's decision. We now affirm the judgment of the Appellate Division. For clarity's sake, we restate the standard applicable in appellate review of agency actions and what is encompassed in that review; however, we discern no error in the appellate panel's performance of its review function here. Further, like the Appellate Division, we see no basis for interfering with the Commissioner's use of a written amplification of reasons for her denial after petitioner's appeal had been filed.

I.

On October 15, 2010, petitioner Tracey Williams, on behalf of a group of founders, submitted an application to the Commissioner to open Quest Academy, a proposed charter high school to serve pupils in grades nine through twelve with approximately eighty pupils per grade. We digress briefly to explain the regulatory process required for charter schools before addressing the Commissioner's response to the Quest Academy application.

3

A.

Pursuant to the Act, a charter school application minimally must include the following information:

a. The identification of the charter applicant;

b. The name of the proposed charter school;

c. The proposed governance structure of the charter school including a list of the proposed members of the board of trustees of the charter school or a description of the qualifications and method for the appointment or election of members of the board of trustees;

d. The educational goals of the charter school, the curriculum to be offered, and the methods of assessing whether students are meeting educational goals. Charter school students shall be required to meet the same testing and academic performance standards as established by law and regulation for public school students. Charter school students shall also meet any additional assessment indicators which are included within the charter approved by the commissioner;

e. The admission policy and criteria for evaluating the admission of students which shall comply with the requirements of [N.J.S.A. 18A:36A-8];

f. The age or grade range of students to be enrolled;

g. The school calendar and school day schedule;

h. A description of the charter school staff responsibilities and the proposed qualifications of teaching staff;

4

i. A description of the procedures to be implemented to ensure significant parental involvement in the operation of the school;

j. A description of, and address for, the physical facility in which the charter school will be located;

k. Information on the manner in which community groups will be involved in the charter school planning process;

l. The financial plan for the charter school and the provisions which will be made for auditing the school pursuant to the provisions of [N.J.S.A. 18A:23-1];

m. A description of and justification for any waivers of regulations which the charter school will request; and

n. Such other information as the commissioner may require.

[N.J.S.A. 18A:36A-5.]

Regulations impose additional requirements, including completion of the Department's "New Jersey Charter School Application." N.J.A.C. 6A:11-2.1(b)(1); see N.J. Dep't of Educ. Office of Charter Sch., Phase One Request for Applications (2013), available at http://www.nj.gov/education/chartsch/app/2013PhaseOneCharter SchoolApplication.pdf. The initial application form is made available no later than August 31 of each year. N.J.A.C. 6A:11-2.1(b)(1).

5

Significantly, the application process proceeds in two phases.[1]  In phase one, the application must include

> i.  The name of the proposed charter school;
>
> ii.  Mission;
>
> iii. Educational program overview;
>
> iv.  Applicant and founder information;
>
> v.   Enrollment and admission information;
>
> vi.  Demonstration of need; and
>
> vii. Community and parent involvement.
>
> [N.J.A.C. 6A:11-2.1(b)(2).]

The Commissioner determines whether the applicant is a "qualified applicant" that advances to phase two of the evaluation process.  See N.J.A.C. 6A:11-2.1(b)(3), (c).  In order to advance to phase two, the applicant must have

> submitted an application that[: 1] has a clear, focused, and results-oriented mission statement that aligns with all parts of the application; [2] demonstrates understanding of the population that the school is likely to serve; [3] has an educational program that is likely to be effective for the student population; [4] has strong and

---

[1] The process is further separated into standard applications and expedited applications.  Standard applicants may submit the phase one application no later than March 31 of the year before the school seeks to open.  N.J.A.C. 6A:11-2.1(b)(5).  Applicants with "demonstrable experience operating an educational institution" may submit applications by October 15 for expedited review.  N.J.A.C. 6A:11-2.1(g).  Quest's application seeking expedited review was filed in accordance with the October 15 deadline.

diverse leadership; and [5] has strong financial planning and management.

[N.J.A.C. 6A:11-2.1(b)(3)(ii).]

In phase two, the applicant must submit additional detailed information addressing the following:

(1) Educational program;

(2) Goals and objectives;

(3) At-risk populations;

(4) Staffing information;

(5) Financial plan;

(6) Governance and organizational plan;

(7) Facilities;

(8) Daily and annual schedule;

(9) Requested waivers; and

(10) All required documentation as set forth in the phase two application. Such documentation shall include, but not be limited to: course and curriculum outlines, graduation requirements, school scheduling information, professional backgrounds of administrators and staff, professional development and evaluation plans, an organizational chart, and documentation of fiscal and legal compliance.

[N.J.A.C. 6A:11-2.1(b)(3)(iii).]

Following receipt of the required phase two information, the Commissioner schedules the applicant for "an in-depth interview" with the Commissioner or a designated representative. N.J.A.C. 6A:11-2.1(b)(3)(iv), (e).

7

Each charter school application must be submitted not only to the Commissioner, but also to the local board of education or, if the district is being operated under State intervention,[2] the State district superintendent.  N.J.S.A. 18A:36A-4(c).  The board or district superintendent must review the application and recommend to the Commissioner whether she should grant or deny the application.  See ibid. (requiring board of education in which proposed charter school is to be located to review application and to forward to Commissioner recommendation on application's merit); N.J.A.C. 6A:11-2.1(d)(1)-(2) (requiring same and setting forth specified time frames dependent on phase of review).  The information clearly is intended to assist the Commissioner in her consideration of the application.

Despite all their detail, the statutory and regulatory programmatic requirements provide no guidance to the Commissioner on how to assess an application.  Case law imposes two requirements, however.  First, "the Commissioner must assess the racial impact that a charter school applicant will have on the district of residence in which the charter school will operate" and "must use the full panoply of [her] powers to avoid" segregation resulting from the grant of a charter school

_____

[2] N.J.S.A. 18A:7A-34 permits the State Board to place a failing school district under State control.  The State Board appoints a State district superintendent to run such a district.  See N.J.S.A. 18A:7A-35.

8

application.  In re Grant of Charter Sch. Application of Englewood on the Palisades Charter Sch. (Englewood on the Palisades II), 164 N.J. 316, 329 (2000).  Second, if the local school district "demonstrates with some specificity that the constitutional requirements of a thorough and efficient education would be jeopardized by [the district's] loss" of the funds to be allocated to a charter school, "the Commissioner is obligated to evaluate carefully the impact that loss of funds would have on the ability of the district of residence to deliver a thorough and efficient education."  Id. at 334-35; see N.J. Const. art. VIII, § 4, ¶ 1 ("The Legislature shall provide for the maintenance and support of a thorough and efficient system of free public schools for the instruction of all the children in the State between the ages of five and eighteen years.").

B.

On December 6, 2010, approximately six weeks after Quest Academy submitted its October 15 application, Ms. Williams received an email response from a representative of the State Department of Education, stating that certain sections of the application were incomplete, insufficient, or unclear.  The response informed Quest Academy of specific deficiencies in its application and afforded it the opportunity to address the concerns raised through the submission of further information.

9

Also on December 6, 2010, in accordance with the Act, Dr. Frank Alvarez, Superintendent of the Montclair Public Schools, provided comments on the Quest Academy application to the Commissioner on behalf of his local board of education. Dr. Alvarez addressed the negative financial impact that the proposed charter school would have on the Montclair School District in light of recent reductions in state aid and the District's reliance on local property taxes. Substantively, Dr. Alvarez criticized the application for lacking clear information on course requirements, inadequately addressing state high school graduation requirements, and failing to specify a process of curriculum development in the nine areas of the state's core curriculum content standards.

Quest Academy submitted additional materials on December 14, 2010, in response to the December 6 departmental request. Thereafter, on January 3, 2011, Department representatives met with Quest founders to discuss the application as augmented by the addenda.

On January 18, 2011, the Commissioner sent a brief and rather form-like letter to Williams denying Quest Academy's application. In it, the Commissioner referred to the forty-five applications that had been reviewed in the application cycle as "present[ing] varying degrees of readiness to successfully implement exciting and educationally innovative models to

10

enhance student achievement," but tersely informed Williams that, "based on recommendations and my review, I am denying your request because of the deficiencies in your application." There was no further detail on those deficiencies in the denial letter.

The letter provided other important information, however. It advised Williams of her right to appeal the Commissioner's denial. It informed Williams that the Department had additional information regarding Quest's application and invited her to call to arrange an appointment with staff to review the additional information. The letter further informed Williams that training was available to assist individuals with preparation of charter school applications for the next charter school application deadline, which was March 31, 2011. The letter invited Williams and the founders to register for the training program offered by the Department for the upcoming application deadline.

Williams, acting pro se, filed a notice of appeal with the Appellate Division on February 24, 2011.

On June 6, 2011, the Commissioner submitted to the Clerk of the Appellate Division an Amplification of Reasons for the denial in the form of a letter from Carly Bolger, Director of the Department's Office of Charter Schools. According to the Amplification, the Commissioner denied the application based on

11

its overall lack of quality, as expressed in the initial letter. In the Amplification, the Commissioner expanded upon her concerns.

The Commissioner characterized Quest Academy's education plan as weak, discerning content and programmatic deficiencies in several aspects of the proposed program. Specifically, the Commissioner noted that

> Quest's educational plan . . . incorporated many different strategies, programs, and philosophies, but failed to present these varied ideas as a comprehensive and fully integrated educational school program. In particular, the goals and objectives presented in the plan were weak. . . . Moreover, the Commissioner found that the strategies presented by Quest were neither connected to, nor supportive of, the proposed educational program.

The Commissioner added that, from her own experience, she believed that stand-alone charter high schools were particularly difficult to open and operate successfully. She questioned the ability of the school to attract sufficient students in the small community of Montclair, and expressed concern that a charter school might interfere with Montclair's desegregation efforts. The letter cited criticisms voiced by Dr. Alvarez and community members who had written unsolicited letters of opposition to the proposed charter school. Those criticisms questioned the capacity and qualifications of Quest's founders; the potential negative impact on the quality of programs and

12

educational offerings at Montclair public schools; a lack of community support for, or interest in, a charter school and, conversely, strong community support for the public high school; and the lack of an adequate facility to house the proposed charter school.

According to the Amplification, based on the entirety of those considerations, the Commissioner had determined that Quest's application did not have a high probability of success. She therefore had denied the application.

C.

On appeal before the Appellate Division, petitioner's criticisms focused on the Commissioner's review procedures and the specific information used by the Commissioner in her evaluation of the application, including the information provided through Dr. Alvarez's evaluation, the citizen letters, and the existing desegregation order that applied to the Montclair public schools. In addition, petitioner contended that the federal No Child Left Behind Act, 20 U.S.C.A. § 6316, required the Commissioner to approve charter school applications in districts, like Montclair, that had been identified as in need of improvement.

In response, the Commissioner addressed the propriety of the information that she had considered in connection with the application, countered the argument that the No Child Left

Behind Act had applicability in this setting, and urged the Appellate Division to affirm her determination because the administrative decision was not arbitrary, capricious, or unreasonable.

The Appellate Division affirmed the Commissioner's denial in an unpublished decision. The court noted that a deferential standard of review applied to its review of the Commissioner's action in this matter. Quoting In re Grant of Charter Sch. Application of Englewood on the Palisades Charter Sch., 320 N.J. Super. 174, 217 (App. Div. 1999), aff'd as modified, 164 N.J. 316 (2000), the court stated that, because the Commissioner "[did] not act in a quasi-judicial capacity," the appellate panel "'[did] not review the Commissioner's decision under the substantial-credible-evidence standard, but rather under the standard of whether the decision is arbitrary, capricious or unreasonable.'"

Turning to the record that the Commissioner considered in making her determination, the appellate panel found that the Commissioner did not act improperly in considering Dr. Alvarez's views, the opposition letters from Montclair citizens, or the desegregation order. The panel held that, based on the record, the Commissioner's denial of Quest Academy's application was not arbitrary, capricious, or unreasonable. The court specifically rejected petitioner's argument that the federal No Child Left

14

Behind Act, 20 U.S.C.A. § 6316, requires the Commissioner to approve charter school applications in districts identified as in need of improvement. Petitioner's other arguments were summarily rejected.

With the assistance of counsel, Williams filed a petition for certification, which was granted. 212 N.J. 288 (2012).

II.

Before this Court, petitioner's arguments are refined. Focusing primarily on the standard of review, she zeros in on two sentences in the Appellate Division's decision and claims that the panel reviewed the Commissioner's determination under a misapprehension of the correct standard for appellate review. She contends that an appellate court reviewing a denial of a charter school application must consider whether the decision was supported by "substantial credible evidence," not simply whether it was "arbitrary, capricious or unreasonable" as the Appellate Division said in its decision. She further argues that the Commissioner should be required to provide written reasons for a denial at the time the decision is made, and that an Amplification of Reasons given after a decision is appealed should not be allowed. Consistent with those criticisms, petitioner claims that due process was violated because the decision, when issued, was not supported by substantial credible evidence.

15

The Commissioner argues that the Appellate Division correctly applied an arbitrary and capricious standard of review. She further argues that the panel appropriately determined that the Commissioner's denial procedurally was compliant with law and substantively was not arbitrary, capricious, or unreasonable.

More specifically, the Commissioner characterizes her decision to deny a charter school application as quasi-legislative, distinguishing it from quasi-judicial actions. The Commissioner points out that the Act does not require the Commissioner to conduct a hearing and none is required by due process. The Commissioner and the applicant do not have an adversarial relationship and the Commissioner is not required, in deciding whether to grant a charter school application, to weigh opposing parties' evidence or make credibility determinations. Therefore, the Commissioner maintains that this appeal does not involve review of quasi-judicial action. Instead, she relies on case law that states that quasi-legislative decisions are reviewed under the arbitrary, capricious, or unreasonable standard. Further, the Commissioner contends that, subsumed in that standard, are the requirements that the Commissioner's decision demonstrate a thorough review of the record and that the decision reached have sufficient support in the record to sustain it. Both requirements, she

16

contends, are met here.  Further, in response to petitioner's objection to the Commissioner's amplification of reasons for her decision, the Commissioner cites Rule 2:5-1(b), which permits a judge, officer, or agency to file an amplification of a prior decision if it is appealed, as authority for her action.

III.

A.

Judicial review of administrative agency action is a matter of constitutional right in New Jersey.  See N.J. Const. art. VI, § 5, ¶ 4 (allocating relief from agency actions to "the Superior Court, on terms and in the manner provided by rules of the Supreme Court, as of right").  Rule 2:2-3(a)(2) provides for review of "final decisions or actions of any state administrative agency or officer" in the Appellate Division of the Superior Court.

Through N.J.S.A. 18A:36A-4(c), the Legislature has decreed that the Commissioner is the final administrative decision-maker on the grant or rejection of a charter school application. Thus, an applicant has the right to appeal the Commissioner's rejection of a charter school application pursuant to Rule 2:2-3(a)(2).  The Act also confers on an unsuccessful applicant a statutory right to appeal.  See N.J.S.A. 18A:36A-4(d) (conferring statutory right to appeal to Appellate Division of Superior Court on charter school applicant and local board of

17

education).

While the Act grants to a denied applicant a statutory right to appeal, it does not confer a right to an administrative hearing. That has the consequence of denying a rejected applicant the ability to claim the right, under the Administrative Procedure Act (APA), N.J.S.A. 52:14B-1 to -15, to a quasi-judicial administrative hearing governed by APA standards for a "contested case." See N.J.S.A. 52:14B-2 (defining "contested case" as "a proceeding . . . in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by constitutional right or by statute to be determined by an agency by decisions, determinations, or orders, addressed to them or disposing of their interests, after opportunity for an agency hearing").[3] However, that does not end all inquiry into the nature of the proceedings before the Commissioner when reviewing an application to operate a charter school.

The labels of "quasi-judicial" and "quasi-legislative" typically are used to determine whether the agency is obligated to provide an administrative adjudicative hearing, regardless of whether the matter would merit the designation of a "contested case" under the APA. See Cunningham v. Dep't of Civil Serv., 69

---

[3] The applicant has not asserted a substantive constitutional right.

N.J. 13, 20 (1975) (using such labels in explaining when, outside of APA requirements, right to trial-like hearing exists as matter of fundamental fairness and administrative due process). If the matter centers on the resolution of disputed adjudicative facts, if the parties are adverse, or if credibility determinations must be made, more formal adjudicatory-type proceedings must be provided (hence the quasi-judicial designation). See, e.g., High Horizons Dev. Co. v. N.J. Dep't of Transp., 120 N.J. 40, 49-51 (1990) (discussing when need arises for trial-like, adjudicatory process). The most important procedural rights in such proceedings are adequate notice, a chance to know opposing evidence, and the opportunity to present evidence and argument in response. Id. at 52-53.

Such labels as quasi-adjudicative and quasi-legislative have limits to their usefulness. Indeed, this Court has recognized that agencies must retain the ability to provide various informal, flexible procedures for determining certain issues or taking certain actions. Ibid. In all instances, fundamental due process requirements of notice and opportunity to be heard must be satisfied, even though the contours of their satisfaction may vary. See id. at 51-54 (reviewing property owner's criticism of procedural fairness in Commissioner of Transportation's handling of application for highway access

19

permit).  As in the matter presently before this Court, High Horizons involved a due process challenge in a matter that did not fit easily into classifications of whether an agency was acting in a judicial or "quasi-judicial" capacity, or in a legislative or "quasi-legislative" capacity.  Id. at 50-51.  Importantly, the labels do not result in a meaningful difference in the role played by judicial review of administrative determinations.  The "core value[] of judicial review of administrative action is the furtherance of accountability."  Id. at 53.

### B.

Reflecting the need to respect agency action taken pursuant to authority delegated by the Legislature, the standard for judicial review of administrative agency action is limited:  An appellate court may reverse an agency decision if it is arbitrary, capricious, or unreasonable.  See In re Petition for Rulemaking, 117 N.J. 311, 325 (1989).  In other words, a court may intervene when "it is clear that the agency action is inconsistent with its mandate."  Ibid.  Indeed, the test often is expressed in the negative.  See, e.g., Brady v. Bd. of Review, 152 N.J. 197, 210 (1997) ("Unless a Court finds that the agency's action was arbitrary, capricious, or unreasonable, the agency's ruling should not be disturbed.").  The test, although deferential, does not lack content.  As this Court has stated on

20

many occasions,

> [a]lthough sometimes phrased in terms of a search for arbitrary or unreasonable agency action, the judicial role [in reviewing an agency action] is generally restricted to three inquiries: (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Mazza v. Bd. of Trs., 143 N.J. 22, 25 (1995).]

See, e.g., In re Stallworth, 208 N.J. 182, 194 (2011); N.J. Soc'y for Prevention of Cruelty to Animals v. N.J. Dep't of Agric., 196 N.J. 366, 384-85 (2008); In re Carter, 191 N.J. 474, 482-83 (2007); Dennery v. Bd. of Educ., 131 N.J. 626, 641 (1993); In re Petition for Rulemaking, supra, 117 N.J. at 325; Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980).

The standard is applicable to administrative agency actions regardless of whether they are quasi-legislative or quasi-judicial.[4]  Examples demonstrate the test's applicability to a quasi-legislative rulemaking context, see, e.g., N.J. Soc'y for

---

[4] Some cases have made this standard for judicial review of agency action a four-part inquiry. See, e.g., Brady, supra, 152 N.J. at 210-11 (separating duty to follow law into two inquiries, one legislative and one constitutional).  We adhere to the test as formulated in Mazza.

21

Prevention of Cruelty to Animals, supra, 196 N.J. at 384-85; In re Petition for Rulemaking, supra, 117 N.J. at 325; Public Serv. Elec. & Gas Co. v. N.J. Dep't of Envtl. Prot., 101 N.J. 95, 103 (1985), as well as to a quasi-judicial context, see, e.g., Mazza, supra 143 N.J. at 25; Dennery, supra, 131 N.J. at 641; Exec. Comm'n on Ethical Standards v. Salmon, 295 N.J. Super. 86, 96-97 (App. Div. 1996).

In this matter, both parties concede that the arbitrary, capricious, or unreasonable standard applicable in the review of administrative agency decisions subsumes the need to find sufficient support in the record to sustain the decision reached by the Commissioner. The point is beyond argument, for a failure to consider all the evidence in a record would perforce lead to arbitrary decision making. See, e.g., Close v. Kordulak Bros., 44 N.J. 589, 599 (1965) (noting that "the proofs as a whole" must be considered); Green v. State Health Benefits Comm'n, 373 N.J. Super. 408, 415 (App. Div. 2004) (finding agency decision that failed to address issues raised in key documents in record arbitrary and capricious). Moreover, a decision based on a complete misperception of the facts submitted in a record would render the agency's conclusion unreasonable. See, e.g., Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588-89 (1988) (stating that appellate court should intervene where agency's "finding is clearly a mistaken one");

22

Constantino v. N.J. Merit Sys. Bd., 313 N.J. Super. 212, 218 (App. Div.) (reversing board's decision where findings were unsupported by record, based on "total disregard" of facts, against "overwhelming weight" of testimony, and based on record "skew[ed]" by administrative law judge), certif. denied, 157 N.J. 544 (1998). Plainly, the standard requires that the administrative decision be supported by the underlying record, regardless of the manner in which due process requires that the record be created. The obligation that there be substantial evidence in the record requires a sifting of the record, and the ability to find support for the conclusions reached by the Commissioner under the statutory framework within which she must act.

IV.

A.

The statutory and regulatory scheme for the approval of applications to operate a charter school functions under tight time frames as cycle after cycle of charter school applications are submitted seeking approval to open in the ensuing school year. N.J.A.C. 6A:11-2.1(b)(1). The regulatory scheme operates under the expectation that an application either will be approved through phases one and two of the review process and move on for implementation in the upcoming school year, or will require retooling and resubmission. N.J.A.C. 6A:11-2.1. The

23

Department, as noted in Quest's denial letter, assists applicants with the application process by offering training programs in how to prepare applications for review.

That said, the applications arrive in batches and must be reviewed and resolved in a timely fashion in order to proceed to implementation in the next school year. See ibid. At oral argument, the Attorney General, arguing for the Commissioner, represented to the Court that the Commissioner is exceedingly careful in the approval of charter schools because of the impact that a wrong decision will have on students who attend a charter school that falters, or worse, fails to provide an educational program that satisfies the constitutional standard of a thorough and efficient education. See Englewood on the Palisades II, supra, 164 N.J. at 323, 336 (stating obligation to provide "thorough and efficient system of education" and holding that Commissioner must assess economic impact of proposed charter school on district of residence). We are appreciative of the importance that must be ascribed to the Commissioner's approval of a charter school and that, nevertheless, such reviews must proceed expeditiously.

Turning to the merits of the Commissioner's determination in respect of Quest Academy's application, we find that the Commissioner's decision was amply supported by the record before her. We do not second guess the educational judgments expressed

24

in the Amplification letter issued on behalf of the Commissioner, such as her findings that Quest Academy "failed to present . . . a comprehensive and fully integrated educational program" and that "the strategies presented by Quest were neither connected to, nor supportive of, the proposed educational program." Moreover, as envisioned by the Legislature, that record properly included relevant submissions necessary for proper consideration and allowance of a charter school to operate. Specifically, we refer to the analysis provided by the local superintendent of schools, which is required to be submitted by N.J.S.A. 18A:36A-4(c) and N.J.A.C. 6A:11-2.1(d). In addition, in Englewood on the Palisades II, supra, we stated that the Commissioner was obliged to consider whether an impacted local school district had demonstrated "with some specificity that the constitutional requirements of a thorough and efficient education would be jeopardized by [the district's] loss" of the funds to be allocated to a charter school, and that the Commissioner was "obligated to evaluate carefully the impact that loss of funds would have on the ability of the district of residence to deliver a thorough and efficient education" when considering whether or not to approve the charter school. 164 N.J. at 334-35. The information in Dr. Alvarez's submission was appropriately part of the Commissioner's determination. We add that Quest Academy was

25

entitled to respond to it by way of argument, at the least, within the tight time frames permitted in the review process, and through any subsequent resubmission of the application.

In addition, petitioner's objection to the Commissioner's reliance on the existing desegregation order as a factor to consider in rejecting the application lacks merit. Again, in Englewood on the Palisades II, supra, we stated that "the Commissioner must assess the racial impact that a charter school applicant will have on the district of residence in which the charter school will operate" and "must use the full panoply of [her] powers to avoid" segregation resulting from the grant of a charter school application. 164 N.J. at 329.

Finally, we see no error in the Commissioner's consideration of unsolicited letters from local citizens or her reliance on her own expertise in assessing overall viability of this proposed charter school. In making predictive or judgmental determinations, case law has recognized the value that administrative expertise can play in the rendering of a sound administrative determination. Judicial deference is at a high when reviewing such findings. See, e.g., Golden Nugget Atl. City Corp. v. Atl. City Elec. Co., 229 N.J. Super. 118, 122-23 (App. Div. 1988).

The Commissioner's decision -- but only as it was amplified -- demonstrates a thoughtful and thorough weighing and judgment

26

of the merits of the Quest Academy application.  There is no right to operate a charter school.  There is only the opportunity to apply for approval to operate one if the application demonstrates proper merit.  The burden is on the applicant to show that it can meet the requirements for obtaining permission to educate public school children in a charter school setting.  The Commissioner's review and rejection of this application is sustainable on the record she had before her.  There is no basis for judicial intervention.

B.

We add only a brief comment about the Commissioner's amplification.  Rule 2:5-1(b) expressly permits its filing after a notice of appeal has been filed.  Indeed, the Rule anticipates that amplification may occur after an appeal has been filed.  To the extent that there are time frames for its submission set forth in the Court Rule, we note that no objection was raised on the basis of the Rule's time frames for such submissions, which are designed to prevent delay in the processing of appeals.

We add that we accept the Commissioner's explanation for her manner of responding to applicants.  Although the letter of denial did not detail the deficiencies found in the application, it offered instead a face-to-face meeting to review in detail the shortcomings in the application that Quest Academy submitted.  According to the Commissioner, the large number of

27

applicants (forty-five) who were reviewed in the batch with Quest Academy rendered lengthy written responses difficult and taxing of precious departmental resources. While it would be naturally preferable from the applicant's perspective to receive initially more than a generic form letter denying an application, here Quest Academy received a bit more than that. Some information about the application's shortcomings was provided in the denial letter, and the subsequent amplification fully detailed those issues. In reviewing as complex a proposal as that required for a newly proposed charter school, there is a benefit to offering a discussion, instead of a written cataloguing, of mistakes or deficiencies in the application that has been rejected. We do not fault the Commissioner for choosing a dialogue involving constructive criticism as her preferred approach for producing approvable applications when resubmitted.

V.

The judgment of the Appellate Division, affirming the Commissioner of Education's denial of the charter school application of Quest Academy, is affirmed.

CHIEF JUSTICE RABNER, and JUSTICES ALBIN and PATTERSON, and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE LaVECCHIA's opinion.

28

SUPREME COURT OF NEW JERSEY

NO.    A-12                              SEPTEMBER TERM 2012

ON CERTIFICATION TO _____ Appellate Division, Superior Court _____



IN THE MATTER OF THE
PROPOSED QUEST ACADEMY
CHARTER SCHOOL OF MONTCLAIR
FOUNDERS GROUP



DECIDED _____ December 16, 2013 _____
                Chief Justice Rabner              PRESIDING
_____
OPINION BY _____ Justice LaVecchia _____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |