**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4255-15T3

WAYNE BYRD,

    Appellant,

v.

BOARD OF REVIEW, DEPARTMENT
OF LABOR AND JOHNSON FARMS,

    Respondent.

_____

Argued October 4, 2017 — Decided October 26, 2017

Before Judges Koblitz, Manahan and Suter.

On appeal from Board of Review, Department of
Labor, Docket No. 039-252.

Rebecca J. Bertram argued the cause for
appellant (Bertram Law Office, LLC, attorneys;
Ms. Bertram, on the brief).

Jana R. DiCosmo, Deputy Attorney General,
argued the cause for respondent (Christopher
S. Porrino, Attorney General, attorney;
Melissa Dutton Schaffer, Assistant Attorney
General, of counsel; Ms. DiCosmo, on the
brief).

PER CURIAM

    Wayne Byrd appeals again, this time from a May 24, 2016

determination of the Department of Labor's Board of Review,

affirming a decision by the Appeal Tribunal for the Department's Division of Unemployment and Disability Insurance requiring Byrd to refund $10,290[1] in overpaid emergency unemployment compensation benefits. Byrd received these benefits in 2011 through no fault of his own, as the result of an admitted agency error. We are forced to remand again to ensure the agency diligently carries out our prior instructions to consider a waiver under N.J.A.C. 12:17-14.2 as of the time it was first requested, without regard to any subsequent repayment from future benefits.

We need not repeat the facts as set forth in our prior opinion. Byrd v. Bd. of Review, No. A-0569-12 (App. Div. Jan. 28, 2014) (slip op. at 2-3). In our prior opinion we wrote:

> We remand to the Director to consider Byrd's request for a waiver as of the time the request was made. At oral argument, Byrd stated that he has been making payments by way of deductions from the unemployment compensation he was entitled to receive since this appeal was filed. The fact that he has made this repayment should not enter into the Director's assessment. We also note that if a waiver is granted, the Division should reimburse Byrd for any repayment he has made while this appeal was pending.
>
> [Id. at 8.]

---

[1] The Division calculated the amount to be $10,706, consisting of twenty-one weeks of payments of $490 in 2011, plus $416 in non-fraud overpayment from a 2009 claim.

After our remand, Byrd was informed: "Since [his] overpayment balance is now $0.00, [his] waiver request is denied." This denial was confirmed by the Director. A telephonic hearing was conducted by the Appeal Tribunal in January 2015 at which an investigator with the Department of Labor, Bureau of Benefit Payment Control, Fraud Prevention and Risk Management Unit testified that "per our instructions here in our office, waiver can only be done when there is a balance." After reading our opinion for the first time at this hearing and acknowledging that the denial was made without knowledge of that opinion, the investigator testified "we go by the laws for our office . . . we had to deny him because there was no balance to be paid." Byrd testified that he was currently unemployed, had sole custody of two of his children and was subsisting on loans from relatives.

After the Appeal Tribunal affirmed, the Board remanded to a new Appeal Tribunal to allow "additional testimony from the claimant . . . to provide financial documentation including his 2011 income tax return to the Appeal Tribunal." At this second telephonic hearing the same Department investigator testified again that Byrd's waiver request was denied solely because he had repaid the overpayment in 2013, without any further equitable determination. By way of explaining why she did not make an equitable analysis of Byrd's waiver request as we instructed, the

investigator testified that her office does not "have anything to do with" Appellate Division decisions and she is not a lawyer. She maintained in her argument to the Appeals Tribunal that "it is the law that the benefits have to be taken at 50 percent . . . [and] any benefits that are owed, no matter whose fault it is, they have to be repaid." The Appeals Tribunal asked "is it possible for the Director to do a redetermination based on the principles in equity analysis at the time?" The investigator said no, clarifying,

> I cannot go into specifics with equity, but we do not waive equity requests. Equity is there so that we can work out a lower amount that the person would have to pay back them self (sic) at a lower rate than what the actual . . . monthly agreement would be. And, again, in Mr. Byrd's position his debt was an Agency error, he wouldn't have to pay the debt back at all, but the law was that the benefits had to be taken at 50 percent.

The Appeals Tribunal questioned Byrd regarding his finances in 2012, when he first sought the refund. He testified that he had had a heart attack eight years before the hearing and was unable to work at all for two years. After that, he worked only in the fall and spring at a nursery. He had a mortgage payment due of approximately $1000 per month, and various other living expenses for himself and his two young children.

The Appeal Tribunal asked Byrd to send him his 2012 tax return as well as his living expenses for 2012, to be marked into

evidence. Byrd also testified that had he not received the federal benefits improperly sought by the agency through no fault of his own, he would have been entitled to State benefits.[2] His attorney argued that had the agency not processed his unemployment benefits request under the wrong program, he would have received benefits under the correct program.[3] The investigator did not voice disagreement with this argument although given the opportunity to do so.

The Appeals Tribunal again affirmed the denial of a waiver, although finding that Byrd was the sole support of two children and had wages of only $10,006 in 2011 and $18,983 in 2012. He estimated Byrd's "monthly expenses for the essentials" at $3900, or $46,800 a year. The Appeals Tribunal then determined that "the claimant's restitution, based on a reasonable repayment schedule, would not have been patently contrary to the principles of equity nor would it have resulted in an extraordinary financial hardship." The Appeals Tribunal stated: "As the claimant owns property and has had regular gainful employment it would not have been an

---

[2] Although Byrd testified to this understanding, the record does not reveal if this is a correct understanding.

[3] At oral argument before us, Byrd's counsel clarified that if Byrd had been entered into the correct program, he would have received $110 less per week, for a total overpayment of $2310 rather than $10,290. The Attorney General did not confirm or deny this representation.

untenable burden for him to refund benefits to which he was not entitled."

Byrd appealed, arguing he had been eligible for benefits, but not under the "code" which the agency incorrectly used. He also argued the Director, as represented by the investigator, had never considered his waiver application using equitable criteria, and that his financial situation qualified him for a waiver.

In pro forma language not specific to Byrd's situation, the Board of Review affirmed. Our review of administrative agency decisions is limited in scope. Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). Due regard is given to the agency's expertise, Ford v. Bd. of Review, 287 N.J. Super. 281, 283 (App. Div. 1996), and the agency's determination will not be disturbed absent a finding that it was "arbitrary, capricious, or unreasonable." Brady, supra, 152 N.J. at 210. "Failure to address critical issues, or to analyze the evidence in light of those issues, renders the agency's decision arbitrary and capricious and is grounds for reversal." Green v. State Health Benefits Comm'n, 373 N.J. Super. 408, 415 (2004).

N.J.S.A. 43:21-16(d) generally "requires the full repayment of unemployment benefits received by an individual who, for any reason, regardless of good faith, was not actually entitled to those benefits." Bannan v. Bd. of Review, 299 N.J. Super. 671,

674 (App. Div. 1997). The regulations do, however, permit the Director to waive repayment of benefits when the recipient did not misrepresent or conceal any material facts and reimbursement "would be patently contrary to the principles of equity." N.J.A.C. 12:17-14.2(a). At the insistence of the Board, we have agreed in the past that a repayment, or "refund issue", decision must be made by the Director and not the Board.

> [I]n arguing before us that the refund issue is not properly before us, counsel for the Board bottoms that argument on the fact that "the Director . . . has not yet considered the matter." (Emphasis supplied.)
>
> We agree with the Board's position to the extent it insists the clear statutory authority for the ordering of refunds reposes solely, exclusively and personally in the Director. N.J.S.A. 43:21-16(d).
>
> [Howard v. Bd. of Review, 173 N.J. Super. 196, 202 (App. Div. 1980).]

N.J.S.A. 43:21-16(d) contains language requiring repayment, "unless the director (with the concurrence of the controller) directs otherwise by regulation." The regulation, N.J.A.C. 12:17-14.2(d), covering the waiver of repayment, states:

> For purposes of determining . . . whether the recovery of the overpayment would be "patently contrary to the principles of equity," the Director and Controller shall consider whether the terms of a reasonable repayment schedule would result in economic hardship to the claimant.

Thus, the Director and _not_ the Appeals Tribunal must make the initial equitable decision.

When we remanded to the Director to make an equitable waiver determination without consideration of Byrd's forced full repayment, we expected the Director to comply. Byrd suggests we should now exercise original jurisdiction to order a refund. R. 2:10-5. We choose instead to remand again, with the hope that the Director will follow our clear instructions. The Director must make an equitable waiver analysis as of the time of the initial waiver application. Our direction should be followed unless successfully appealed to a higher court. An agency's powers on remand depend upon the contents of the court's remand order, which the agency must obey precisely; to that extent the court's remand instructions become the "law of the case." Trantino v. N.J. State Parole Bd., 331 N.J. Super. 577, 606 (App. Div. 2000) (quoting Lowenstein v. Newark Bd. of Educ., 35 N.J. 94, 116-17 (1961)).

The Director should consider in the equitable equation the benefits, if any, Byrd would have received for the relevant time periods had the agency placed Byrd into the correct benefits program. Under no circumstances should Byrd suffer adverse economic consequences due to the error of an agency employee. Thus, regardless of equitable considerations, Byrd should be given

a refund for any benefits he repaid that he would have received had his application been processed properly.

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4255-15T3