**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3182-19

CYNTHIA MEEKINS,

    Petitioner-Appellant,

v.

STATE HEALTH BENEFITS
COMMISSION,

    Respondent-Respondent.

_____

Argued October 12, 2021 – Decided December 6, 2021

Before Judges Sumners and Vernoia.

On appeal from the State Health Benefits Commission, Department of the Treasury.

Michael P. DeRose argued the cause for appellant (Crivelli & Barbati, LLC, attorneys; Michael P. DeRose, on the briefs).

Matthew Melton, Deputy Attorney General, argued the cause for respondent (Andre J. Bruck, Acting Attorney General, attorney; Melissa H. Raksa, Assistant Attorney General, of counsel; Matthew Melton, on the brief).

PER CURIAM

Petitioner Cynthia Meekins appeals the final agency decision of State Health Benefits Commission (Commission) denying her retirement health insurance benefits under the State Health Benefits Plan (SHBP). The Commission's decision was based upon its interpretation of the applicable statutes and regulations, and its finding that because Meekins was not actively employed by the State of New Jersey or a State entity at the time of her retirement, she was not a "retired employee" and, therefore, did not qualify for retiree coverage under SHBP. We affirm.

I.

In 1985, Meekins began her New Jersey public employment career, working for the Central Regional School District and becoming a member of the Public Employees Retirement System (PERS). In 2004, Rutgers University ("Rutgers" or "the university") hired her as a Student and Academic Services Specialist. As a university employee, she was employed by the State of New Jersey and continued her PERS membership and received health insurance benefits under the SHBP.

In July 2015, Meekins was notified by the university that she was being terminated as part of a major lay-off plan. She subsequently met with a Division

of Pensions and Benefits (Division) counselor to inquire about the impact of the layoff on her pension contributions. During the meeting, the counselor advised her that if she delayed her retirement five more years until she was fifty-five years old her monthly pension benefit would increase by $2,000. According to Meekins, the counselor never advised her that she would not be eligible for retiree SHBP coverage if she was not receiving SHBP coverage at the time of her retirement.

Following a brief layoff, Meekins returned to employment at Rutgers in February 2016. She worked at the university for another year until she was laid off again in February 2017. After this second layoff, Meekins continued her enrollment in SHBP by making monthly COBRA payments.

In June 2017, Meekins accepted a position at Barnard College of Columbia University. She then cancelled her SHBP coverage because her new job provided health insurance coverage. Meekins did not return to public employment in New Jersey.

Two years later, on May 31, 2019, Meekins filed for PERS early retirement with the Division, effective June 1, 2019, based upon her age of fifty-five and thirty-one years of service credit. On August 16, the Division sent her a letter denying her retiree coverage under SHBP "because [she] did not

3

maintain [her] . . . health coverage until the date of [her] retirement."  Meekins appealed the decision to the Commission.

On September 11, the Commission heard Meekins's appeal.  The Commission, however, tabled its decision until November 20, "to allow [her] time to gather information from Rutgers University regarding the termination of [her] employment in 2017" because she claimed she "received a 'retirement package' from Rutgers."

On November 20, after considering "all the information submitted," the Commission denied Meekins's appeal.  In a November 25 letter notifying her of its decision, the Commission explained:

> the rules and regulations of the SHBP explicitly state that there cannot be a gap in health benefits coverage between active coverage and retired coverage. [N.J.A.C.] 17:9-6.1 defines a retired employee as:
>
>> Retired employees of the State of New Jersey and of employers defined as State agencies in N.J.S.A. 52:14-17.26, who were eligible for coverage as active employees immediately prior to retirement and who continued coverage at retirement[.]
>
> Your employment with Rutgers University ended February 4, 2017.  You carried COBRA from March 1, 2017[,] through July 1, 2017.  You retired on an early retirement effective for June 1, 2019.  Retiree coverage would have begun on July 1, 2019.  However, since

4

there was a lapse in coverage from July 1, 2017[,] through July 1, 2019[,] you are not eligible for retired coverage.

On December 17, Meekins appealed "the Commission's determination in both law and fact" and "request[ed] that the matter be declared a contested case and transmitted to the Office of Administrative Law for the appropriate hearing." Her request was subsequently denied.

On March 11, 2020, the Commission issued its final agency decision, denying Meekins's request for a contested case hearing and her enrollment into SHBP as a retiree. Applying essentially the same reasoning as it set forth in its November 25 letter, but in greater detail, the Commission stated:

> The health care benefits coverage under the SHBP of any employee shall cease upon the discontinuance of employment, subject to such regulations as may be prescribed by the Commission for continuance of coverage after retirement. N.J.S.A. 52:14-17.32.
>
> To be eligible to enroll in the SHBP in retirement an individual must be a "retired employee" as defined by N.J.A.C. 17:9-6.1. A "retired employee" includes "[r]etired employees of the State of New Jersey and of employers defined as State agencies in N.J.S.A. 52:14-17.26, who were eligible for coverage as active employees immediately prior to retirement and who continued coverage at retirement." N.J.A.C. 17:9-6.l(b)(l). For prospective retirants, continuity of coverage may be extended until the application for retirement is formally approved or denied by the Board of Trustees of the retirement system paying the benefit.

A-3182-19

N.J.A.C. 17:9-6.2(a). However, the coverage must be continuous for coverage to be extended under N.J.A.C. 17:9-6.2(a).

To be eligible for retiree health benefits there must be coverage under the SHBP immediately prior to retirement and continued at retirement. Continuity of coverage can only be extended under N.J.A.C. 17:9-6.2(a) only if there is continuous coverage. []Meekins's active health benefits coverage terminated on June 30, 2017, but her retirement did not become effective until July 1, 2019. []Meekins had a two[-]year lapse in coverage and without continuous coverage, she is not eligible for retiree health benefits.

(first alteration in original).

In addition, the Commission rejected Meekins's contention "that a Division counselor gave her inaccurate and incomplete information in 2015 when her employment with Rutgers was first terminated." Because Meekins did not retire at that time and "returned to employment at Rutgers in February 2016," the Commission determined "she did not rely on the alleged statements of the Division counselor when she decid[ed] not to retire in 2015."

The Commission also rejected Meekins's assertions that: (1) "a Division counselor gave her inaccurate and incomplete information in 2015 when her employment with Rutgers was first terminated"; and (2) the Division failed to advise her after her second lay-off in 2017 "that she would become ineligible

6                                                                    A-3182-19

for retiree health benefits if she did not file for retirement when she left employment." The Commission stated:

> this information was provided to []Meekins by her employer in the retirement package, which included Fact Sheet #11, a document that is also publicly available, that explains to be eligible for retired group health benefits coverage a member "must have been eligible for health insurance coverage until their retirement date." During her presentation to the Commission on November 25, 2019, []Meekins admitted that she did not intend to retire in 2017. [Her] incorrect belief that pension benefits and health benefits are tied together, cannot displace the eligibility requirements [f]or retiree health benefits.

Finally, the Commission determined there was no need for a contested hearing because it was "able to reach its findings of fact and conclusions of law, based on . . . undisputed facts and . . . [its] conclusions of law."

## II.

Meekins now appeals the Commission's final agency decision, presenting the same unsuccessful arguments she raised in the administrative proceeding. She asserts she qualifies for retiree SHBP coverage based on her thirty-one years of public service and contributions to PERS. She relies upon N.J.A.C. 17:9-6.1(a), which states in part that, "'retired employee' means 'a person who is eligible for coverage under the SHBP's retiree group.'" Citing Barron v. State Health Benefits Com'n, 343 N.J. Super. 583 (App. Div. 2001), she insists the

legislative intent of N.J.S.A. 52:14-17.32(c)(1)[1] is to provide health benefits to retirees who accrue at least twenty-five years of service credit. She also reiterates her equitable estoppel argument that she is entitled to retiree health insurance benefits because she was not advised by the Division that a failure to be enrolled in SHBP at the time of her retirement would disqualify her for coverage. We disagree and affirm substantially for the reasons set forth in the Commission's final agency decision. We add the following comments.

A.

This court's review of administrative agency decisions is generally limited. In re Stallworth, 208 N.J. 182, 194 (2011). "We will ordinarily defer to the decision of a State administrative agency unless the appellant establishes that the agency's decision was arbitrary, capricious, or unreasonable, or that it was unsupported by sufficient credible, competent evidence in the record." Green v. State Health Benefits Com'n, 373 N.J. Super. 408, 414 (App. Div. 2004).

---

[1] The statute is part of the New Jersey Health Benefits Program Act, N.J.S.A. 52:14-17.24 to .45.

It is also well established that "[c]ourts afford an agency great deference in reviewing its interpretation of statutes within its scope of authority." N.J. Ass'n of Sch. Adm'rs v. Schundler, 211 N.J. 535, 549 (2012) (citations omitted). The same applies to an agency's interpretation of its own regulations. R.S. v. Div. of Med. Assistance & Health Servs., 434 N.J. Super. 250, 261 (App. Div. 2014) (quoting I.L. v. N.J. Dep't of Human Servs., Div. of Med. Assistance & Health Servs., 389 N.J. Super. 354, 364 (App. Div. 2006)). Courts defer to the interpretation of legislation by the administrative agency to whom its enforcement is entrusted, but only if that interpretation "is not plainly unreasonable." Merin v. Maglaki, 126 N.J. 430, 437 (1992); accord Matturri v. Bd. of Trs. of the Judicial Ret. Sys., 173 N.J. 368, 382 (2002). Nonetheless, "when an agency's decision is based on the 'agency's interpretation of a statute or its determination of a strictly legal issue,' we are not bound by the agency's interpretation. Statutory interpretation involves the examination of legal issues and is, therefore, a question of law subject to de novo review." Saccone v. Bd. of Trs. of Police & Firemen's Ret. Sys., 219 N.J. 369, 380 (2014) (quoting Russo v. Bd. of Trs., Police & Firemen's Ret. Sys., 206 N.J. 14, 27 (2011)).

"When assessing a regulation's intent, '[t]he same rules of construction that apply to the interpretation of statutes guide our interpretation of

9

regulations.'" J.H. v. R & M Tagliareni, LLC, 239 N.J. 198, 216 (2019) (alteration in original) (quoting Headen v. Jersey City Bd. of Educ., 212 N.J. 437, 451 (2012)). The first step in interpreting the statute is to look "to the plain language of the statute," and "ascribe to the statutory language its ordinary meaning." D'Annunzio v. Prudential Ins. Co. of Am., 192 N.J. 110, 119-20 (2007) (citations omitted). Our "goal in the interpretation of a statute is always to determine the Legislature's intent." Id. at 119 (citing Wollen v. Borough of Fort Lee, 27 N.J. 408, 418 (1958)). "Where a statute is clear and unambiguous on its face and admits of only one interpretation, a court must infer the Legislature's intent from the statute's plain meaning." O'Connell v. State, 171 N.J. 484, 488 (2002) (citing V.C. v. M.J.B., 163 N.J. 200, 217 (2000)). When a statute's plain language lends to only one interpretation, a court should not consider "extrinsic interpretative aids." DiProspero v. Penn, 183 N.J. 477, 492 (2005) (quoting Lozano v. Frank DeLuca Const., 178 N.J. 513, 522 (2004)). "On the other hand, if there is ambiguity in the statutory language that leads to more than one plausible interpretation, we may turn to extrinsic evidence, 'including legislative history, committee reports, and contemporaneous construction.'" Id. at 492-93 (quoting Cherry Hill Manor Assocs. v. Faugno, 182 N.J. 64, 75 (2004)).

B.

A PERS retiree's eligibility for SHBP coverage is governed by N.J.S.A. 52:14-17.32(c)(1), N.J.A.C. 17:9-6.1, and N.J.A.C. 17:9-6.2. The intent of the statute and regulations is clearly and unambiguously stated: for a PERS retiree to be eligible for SHBP, he or she must be an employee at the time of retirement.

N.J.S.A. 52:14-17.32(c)(1) provides:

> From funds appropriated therefor, the State shall pay the premium or periodic charges for the benefits provided to a retired State employee and the employee's dependents covered under the program, but not including survivors, _if such employee retired from one or more State or locally-administered retirement systems on a benefit or benefits based in the aggregate on 25 years or more of nonconcurrent service credited in the retirement systems_, excluding service credited under the Defined Contribution Retirement Program established pursuant to P.L.2007, c.92 (C.43:15C-1 et al.), and excepting the employee who elected deferred retirement, but including the employee who retired on a disability pension based on fewer years of service credited in the retirement systems and shall also reimburse such retired employee for the premium charges under Part B of the federal Medicare program covering the retired employee and the employee's spouse.
>
> [N.J.S.A. 52:14-17.32(c)(1) (emphasis added).]

In Barron, we held N.J.S.A. 52:14-17.32(c)(1) provides that free medical coverage shall be provided to any "retired State employee and his [or her]

11

dependents covered under [the SHBP] . . . if such employee retired from a State-administered retirement system on a benefit based on twenty-five years or more of service credited in such system." 343 N.J. Super. at 586 (second alteration in original) (emphasis added).

N.J.A.C. 17:9-6.1 provides, in pertinent part:

(a) "Retired employee" means a person who is eligible for coverage under the SHBP's retiree group. . . .

(b) The definition of "retired employee" also includes the following classes of retired employees who are eligible for coverage:

1. Retired employees of the State of New Jersey and of employers defined as State agencies in N.J.S.A. 52:14-17.26, who were eligible for coverage as active employees immediately prior to retirement and who continued coverage at retirement[.]

In addition, N.J.A.C. 17:9-6.2(a)(2), provides, for prospective retirees, "continuity of coverage may be extended until such time as the application for retirement is formally approved or denied by the Board of Trustees of the retirement system paying the benefit." However, to avoid a lapse of SHBP coverage, "[t]he retiring employee . . . must submit personal payments to the [SHBP] in order to continue coverage."

The plain language of these statutory and regulatory guidelines is clear and unambiguous that, because Meekins was not covered by SHBP at the time

12

of her retirement, she was ineligible for SHBP retiree coverage. It is obvious to us there is no text in either statute or regulation supporting Meekins's claim for relief. Thus, we do not consider any extrinsic evidence to determine whether the Commission misapplied the law.

Meekins's equitable estoppel contention is equally unpersuasive. To sustain such a contention, she must show the Commission or its representatives "engaged in conduct, either intentionally or under circumstances that induced reliance, and that [she] acted or changed [her] position to [her] detriment." Tasca v. Bd. of Trs., Police & Firemen's Ret. Sys., 458 N.J. Super. 47, 59 (App. Div. 2019) (quoting Knorr v. Smeal, 178 N.J. 169, 178 (2003)). She has not done so. There is no assertion the Division counselor misadvised Meekins before her initial lay-off from Rutgers in 2015, which caused her to be ineligible for SHBP retiree coverage when she eventually retired in 2019. The counselor did not have an affirmative duty to advise her that she would be ineligible for SHBP retiree benefits if she was not in the SHBP at the time she retired. Indeed, Meekins was properly advised through Fact Sheet #11 that she had to be covered by SHBP upon retirement to receive retiree health insurance benefits.

The Commission's final agency decision is not arbitrary, capricious, nor unreasonable, and is supported by the credible evidence in the record. R. 2:11-

3(e)(1)(D).  To the extent we have not specifically addressed any of Meekins's

arguments, they lack sufficient merit to warrant discussion in this opinion.  <u>R.</u>

2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

14