**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0484-24

ELIAS L. SCHNEIDER,

     Petitioner-Appellant,

v.

NEW JERSEY MOTOR
VEHICLE COMMISSION,

     Respondent-Respondent.

_____

Submitted October 16, 2025 – Decided October 30, 2025

Before Judges Mayer and Jacobs.

On appeal from the New Jersey Motor Vehicle Commission.

Elias L. Schneider, appellant pro se.

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Amy Chung, Deputy Attorney General, on the brief).

PER CURIAM

Petitioner Elias L. Schneider appeals from an October 9, 2024 final agency decision by respondent New Jersey Motor Vehicle Commission (MVC) suspending his driving privileges indefinitely effective October 20, 2024 as a result of his failure to submit medical information. We affirm.

We recite the facts from the record before the MVC. On July 23, 2024, a New York cardiologist affiliated with Columbia Irving Medical Center sent a letter to the MVC "formally request[ing] the revocation of" petitioner's driver's license. The letter indicated petitioner had a heart condition and relied on a heart pump. The letter further noted that "[d]espite treatment, [petitioner] has been experiencing frequent episodes of syncope (fainting)" which "occur without warning and have been increasing in frequency."

On July 28, the MVC wrote a letter to petitioner captioned "Medical Fitness – Initial Packet Notice" advising it received information concerning petitioner's medical condition. The letter requested he submit medical forms signed by his physician within forty-five days to determine whether he was "medically and/or physically able to drive a motor vehicle safely." Petitioner did not respond to this request.

A-0484-24

On September 20, 2024, the MVC notified petitioner that his driving privileges would be suspended indefinitely as of October 20, 2024 unless he supplied the medical data requested in the MVC's July 28 letter.

About two weeks before the MVC's deadline for suspension of petitioner's driving privileges, he wrote to the agency to request a hearing and an extension of time to provide the medical data. Petitioner claimed his New Jersey cardiologist was unable to provide the requested medical information and the earliest appointment with another cardiologist was November. In his letter, petitioner asserted N.J.S.A. 39:3-10.4, which requires physicians advise the MVC regarding a patient's potential inability to drive safely, was unconstitutional.

The MVC responded in an October 9, 2024 letter. Because petitioner failed to submit the requested medical data, the MVC suspended his driving privileges indefinitely effective October 20, 2024.

Petitioner contends the MVC's indefinite suspension of his driving privileges and denial of his request for a hearing was arbitrary, capricious, and unreasonable. He further argues N.J.S.A. 39:3-10.4 violates his right to privacy and contravenes the physician-patient privilege. In addition, petitioner challenges the constitutionality of N.J.S.A. 39:3-10.4.

A-0484-24

Our review of an agency's determination is limited.  See Allstars Auto

Grp., Inc. v. Motor Vehicle Comm'n, 234 N.J. 150, 157 (2018) (citing Russo v.

Bd. of Trs., 206 N.J. 14, 27 (2011)).  "We will not overturn an agency

determination unless it is arbitrary, capricious, or unreasonable."  In re Renewal

Application of TEAM Acad. Charter Sch., 247 N.J. 46, 73 (2021) (citing In re

Att'y Gen. L. Enf't Directive Nos, 2020-5 & 2020-6, 246 N.J. 462, 491 (2021)).

A party challenging an agency action bears the burden of demonstrating the

action was arbitrary, capricious, or unreasonable.  Id. at 73-74 (citing In re Att'y

Gen., 246 N.J. at 491).  In determining whether an agency's action is arbitrary,

capricious, or unreasonable, we consider:

> (1) whether the agency's action violates express or implied legislative policies, that is, did the agency follow the law; (2) whether the record contains substantial evidence to support the findings on which the agency based its action; and (3) whether in applying the legislative policies to the facts, the agency clearly erred in reaching a conclusion that could not reasonably have been made on a showing of the relevant factors.
>
> [Id. at 74 (quoting In re Proposed Quest Acad. Charter Sch. of Montclair Founders Grp., 216 N.J. 370, 385-86 (2013)).]

The express legislative policy behind enactment of N.J.S.A. 39:3-10.4

supports the MVC's decision.  The "privilege to drive motor vehicles" may be

revoked "for a violation of any [motor vehicle provisions] or on any other

4

reasonable grounds." N.J.S.A. 39:5-30(a). Under the New Jersey Administrative Code, a person may lose their license if they, "[t]hrough any mental or physical defect [, are] incapable of operating a motor vehicle in a safe manner." N.J.A.C. 13:21-8.4(a)(2). To determine if an individual is incapable of operating a motor vehicle in a safe manner, N.J.S.A. 39:3-10.4 requires physicians notify the MVC if a patient suffers from recurring episodes of unconsciousness or loss of motor coordination despite medical treatment.

The letter from petitioner's New York cardiologist to the MVC addressed the precise risks the statute was designed to prevent. The letter indicated petitioner suffered from frequent fainting episodes and recommended his driver's license be revoked "to prevent potential accidents and ensure the safety of the public." The MVC's decision to suspend petitioner's driving privileges was in accord with New Jersey's public policy of protecting the public from unsafe drivers.

An agency's decision must find "sufficient support in the record" and draw from "all the evidence in a record." In re Quest Acad., 216 N.J. at 386. The agency must "explain its decision in sufficient detail to assure us [it] actually considered the evidence and addressed all of the issues before it." Green v. State Health Benefits Comm'n, 373 N.J. Super. 408, 414 (App. Div. 2004). And the

agency's decision must not be "based on a complete misperception of the facts submitted in a record." In re Quest Acad., 216 N.J. at 387.

Because petitioner failed to supply any medical information, the only evidence available to the MVC was the letter from petitioner's New York cardiologist.[1] The letter from petitioner's New York cardiologist contained ample credible evidence supporting the MVC's determination that petitioner was incapable of driving safely.

Petitioner next argues he received inadequate notice of revocation of his license because he did not see the letter from his New York cardiologist until he filed this appeal. He further asserts he was entitled to a hearing prior to revocation of his driver's license.

"[A]gencies must retain the ability to provide various informal, flexible procedures for determining certain issues or taking certain actions," so long as the agency otherwise affords notice and an opportunity for the affected party to be heard. Id. at 384-85 (citing High Horizons Dev. Co. v. N.J. Dep't of Transp., 120 N.J. 40, 52-53 (1990)). The MVC informed petitioner, in both its July 2024

---

[1] Petitioner claims the MVC possessed two automobile accident reports when it suspended his driver's license. However, these reports were not in the record on appeal. Nor is there anything in the record indicating the MVC relied on any accident reports in rendering its decision.

A-0484-24

and September 2024 notices, that it received information indicating he was unfit to drive. Based on petitioner's October 7, 2024 letter to the MVC, he knew that information came from his New York cardiologist. We are satisfied petitioner had notice of the possible revocation of his driver's license.

We also reject petitioner's claimed entitlement to a hearing. Individuals challenging administrative agency actions are not necessarily entitled to a hearing. See Allstars Auto Grp., 234 N.J. at 158 (noting the Administrative Procedure Act creates no substantive right to an administrative hearing (citing In re Fanelli, 174 N.J. 165, 172 (2002))). Courts examine the "plain language" of an agency's enabling statute to determine whether a hearing is required prior to certain agency action. Id. at 161.

The MVC may suspend or revoke a person's driver's license on "reasonable grounds, after due notice in writing of such proposed suspension, revocation, disqualification or prohibition and the ground thereof." N.J.S.A. 39:5-30(a). This statute further requires the individual facing a possible suspension or revocation of their driver's license to request a hearing, in writing, within ten days of the agency's issuance of the notice. Id. at (b). Petitioner did not request a hearing within ten days of either the MVC's July or September 2024 notices.

Petitioner failed to show the MVC's decision violated legislative policy, lacked substantial evidence in the record, or was clearly erroneous. See TEAM Acad. Charter Sch., 247 N.J. at 74 (citing In re Quest Acad., 216 N.J. at 385-86). Having reviewed the record, we are satisfied the MVC's indefinite suspension of his driver's license was not arbitrary, capricious, or unreasonable.

Nor do we find any merit to petitioner's constitutional and privacy arguments. Petitioner proffered conclusory objections to the medical information contained in the letter from his New York cardiologist without presenting any substantive countervailing medical data.

N.J.S.A. 39:3-10.4 requires physicians notify the MVC when they determine a patient, despite medical treatment, suffers from recurring episodes of unconsciousness or loss of motor coordination. The statute provides:

> Each physician treating any person [sixteen] years of age or older for recurrent convulsive seizures or for recurrent periods of unconsciousness or for impairment or loss of motor coordination due to conditions such as, but not limited to, epilepsy in any of its forms, when such conditions persist or recur despite medical treatments, shall, within [twenty-four] hours after his determination of such fact, report the same to the Director of the Division of Motor Vehicles. The director, in consultation with the State Commissioner of Health, shall prescribe and furnish the forms on which such reports shall be made.
>
> [N.J.S.A. 39:3-10.4.]

Petitioner asserts a facial challenge to the constitutionality of N.J.S.A. 39:3-10.4, relying on the United States Supreme Court's decision in Whalen v. Roe, 429 U.S. 589 (1977), as well as the Fourth and Fourteenth Amendments to the federal constitution. To prevail on his facial challenge, petitioner must demonstrate N.J.S.A. 39:3-10.4 cannot operate constitutionally in any instance or that it lacks a "plainly legitimate sweep." In re Contest of Nov. 8, 2011 Gen. Election of Off. of N.J. Gen. Assembly, 210 N.J. 29, 47 (2012) (internal citations omitted).

The challenged statute in Whalen required doctors practicing in New York to report their issuance of prescriptions for addictive drugs to their patients, including identifying information about the patient. 429 U.S. at 594. The purpose of the challenged statute was to divert addictive prescription drugs from illicit markets. Id. at 591-93.

The Whalen Court recognized a constitutionally protected "zone of privacy," encompassing a patient's personal health information based on the substantive due process guarantees of the Fourteenth Amendment. Id. at 598-600. However, the Court also recognized disclosure of "private medical information" to "representatives of the [s]tate having responsibility for the health of the community, does not automatically amount to an impermissible

invasion of privacy." Id. at 602. The Court thus upheld the statute against a facial challenge, recognizing the state's "vital interest in controlling the distribution of dangerous drugs" and finding its reporting requirements a "reasonable exercise of New York's broad police powers" under the Fourteenth Amendment. Id. at 598.

Like the federal Fourteenth Amendment, "Article I, § 1 of the New Jersey Constitution encompasses the right of privacy." Doe v. Poritz, 142 N.J. 1, 89 (1995) (first citing Right to Choose v. Byrne, 97 N.J. 287, 303 (1982); and then citing State v. Baker, 81 N.J. 99, 117 (1979)). New Jersey courts have specifically recognized "a privacy right in [a patient's] medical records and medical information." Smith v. Datla, 451 N.J. Super. 82, 99 (App. Div. 2017) (citing United States v. Westinghouse, 638 F.2d 570, 577 (3d Cir. 1960)). To "resolv[e] conflicts between the government's need for information and the individual's right of confidentiality," courts apply a balancing test weighing the "incursion on those [privacy] interests" against the "state interest in protecting the public" and considering whether "the means chosen are narrowly tailored to that interest." Doe, 142 N.J. at 90-91 (citing In re Martin, 90 N.J. 295, 318 (1982)).

A-0484-24

The New Jersey Supreme Court outlined the relevant factors in applying this balancing test as:

> [(1)] the type of record requested; [(2)] the information it does or might contain; [(3)] the potential for harm in any subsequent nonconsensual disclosure; [(4)] the injury from disclosure to the relationship in which the record was generated; [(5)] the adequacy of safeguards to prevent unauthorized disclosure; [(6)] the degree of need for access; and [(7)] whether there is an express statutory mandate, articulated public policy, or other recognized public interest militating toward access.
>
> [Id. at 88 (internal citations omitted).]

These factors are relevant only after a party raises a "colorable privacy claim at the outset." Brennan v. Bergen Cnty. Prosecutor's Off., 233 N.J. 330, 342 (2018). Even assuming petitioner raised a colorable privacy claim regarding his health information, N.J.S.A. 39:3-10.4 survives scrutiny under the Doe factors because the statute is particularized and expresses a valid public purpose in protecting the public from unsafe drivers.

First, the information required under N.J.S.A. 39:3-10.4 compels disclosure of a narrow and limited aspect of a patient's medical history. Under the statute, physicians are obligated to report to the MVC only when patients experience recurrent seizures, periods of unconsciousness, impairment, or loss of motor coordination. Further, N.J.S.A. 39:3-10.4 requires a patient's medical

A-0484-24

information concerning fitness to drive be sent only to the MVC. The potential for unauthorized disclosure of a patient's medical information is unlikely because such information must be "kept in the confidence of the [MVC] and shall not be revealed or used by the [MVC] in any manner or in any circumstances except for the purpose of determining the eligibility of any person to operate a motor vehicle on the highways of this State." N.J.S.A. 39:3-10.7.

N.J.S.A. 39:3-10.4 reflects New Jersey's express public policy requiring disclosure of information bearing on a person's ability to drive safely. As recognized by our Supreme Court, the State has a "vital and compelling interest in maintaining highway safety by ensuring that only qualified drivers operate motor vehicles." State v. Donis, 157 N.J. 44, 51 (1998) (quoting State v. Kadelak, 280 N.J. Super. 349, 360 (App. Div. 1995)).

Because the intrusion upon patient information compelled under N.J.S.A. 39:3-10.4 is minimal in comparison to the strong public policy favoring disclosure, petitioner cannot demonstrate N.J.S.A. 39:3-10.4 violates either the federal or New Jersey constitutions or lacks a legitimate governmental interest. Therefore, any facial challenge to the statute fails.

To the extent we have not addressed petitioner's remaining arguments, they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-0484-24