IN THE MATTER OF THE REVISION OF RATES FILED BY LAMBERTVILLE WATER COMPANY INCREASING THE RATES FOR WATER SERVICE LAMBERTVILLE WATER COMPANY, PETITIONER-APPELLANT, v. NEW JERSEY BOARD OF PUBLIC UTILITY COMMISSIONERS, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 14, 1977—Decided September 29, 1977.

26

Before Judges HALPERN, LARNER and KING.

*Mr. William C. Davis* argued the cause for appellant (*Messrs. Hyland, Davis & Reberkenny,* attorneys; *Mr. John S. Fields* on the brief).

*Mr. William Gural,* Director, Division of Rate Counsel, argued the cause for *Mr. Stanley C. Van Ness,* Public Advocate.

*Mr. Bertram P. Goltz, Jr.,* Deputy Attorney General, argued the cause for respondent (*Mr. Robert J. Del Tufo,* Acting Attorney General, attorney; *Mr. Stephen Skillman,* Assistant Attorney General, of counsel).

The opinion of the court was delivered by

LARNER, J. A. D. This is an appeal from the determination of the Board of Public Utility Commissioners (Board) of an application for a rate increase by Lambertville Water Company (Lambertville). Lambertville limits its appeal to two issues: (1) failure of the Board to include in the revenue calculations an allowance for federal income tax expense at the statutory rate of 48%, and (2) the refusal to effectuate the rate relief retroactively to April 1, 1975.

The question relating to the income tax expense arises because Lambertville is a subsidiary of General Water Works Corp., which in turn is a subsidiary of I. U. International. This parent company is a multinational conglomerate with approximately 200 subsidiaries consisting both of regulated and unregulated companies.

I. U. International has elected to file a consolidated income tax return for all of its companies pursuant to 26 *U. S. C. A.* § 1501. In its relationship with its subsidiaries it has adopted a policy of requiring each subsidiary show-

ing taxable income to pay to the parent 48% of that income. Part is utilized to pay International's tax to the Government while the excess is distributed to the subsidiaries with negative tax incomes.[1]

Lambertville contends that its revenue picture should be computed by allowing a full deduction of 48% of income as paid to I. U. International. The hearing examiner and Board disagreed with this position on the basis that the payment to the parent company at the maximum corporate rate is not truly a tax expense in view of the tax benefits gained by I. U. International and some of its subsidiaries by virtue of the filing of a consolidated return.

We agree that Lambertville is not entitled to a deduction in the amount of 48% of net income merely because that is the amount paid to its parent company as a result of inter-company policy or agreement. Such payment does not truly represent the tax payable to the Internal Revenue Service. If Lambertville is part of a conglomerate of regulated and unregulated companies which profits by consequential tax benefits from Lambertville's contributions, the utility consumers are entitled to have the computation of those benefits reflected in their utility rates.

It is only the real tax figure which should control rather than that which is purely hypothetical. See *In re New Jersey Power & Light Co.*, 9 *N. J.* 498, 528 (1952). And the P. U. C. Commissioners therefore have the power and function to take into consideration the tax savings flowing from the filing of the consolidated return and determining what proportion of the consolidated tax is reasonably attributable to Lambertville. See *F P C v. United Gas*

---

[1] The factual picture is highlighted by the opinion of the Maine Public Utilities Commission in *Re Mechanic Falls Water Co.*, 13 *P. U. R.* 4th 347, 350–355 (Me. PUC 1976), dealing with the same issue involving I. U. International. The Commission found that I. U. International collected in 1974 a total of $25,645,163 in federal income tax payments from its subsidiaries, but paid only $4,604,578 in actual taxes to the Government. 13 *P. U. R.* 4th at 351.

*Pipe Line Co.,* 386 *U. S.* 237, 87 *S. Ct.* 1003, 18 *L. Ed.* 2d 18 (1967). In *Re Mechanic Falls Water Co., supra,* a similar tax deduction by an I. U. International subsidiary was modified by the Maine Public Utilities Commission. The Commission correctly observed:

Amounts allowed for federal income taxes in rates should, to the extent permitted by law, be based upon the realistic expectation of the taxes actually to be paid to the federal government. [13 *P. U. R.* 4th at 354]

■ Although the Board of Public Utility Commissioners in this case had the right to reject the 48% tax factor and arrive at a reasonable adjusted figure comporting with realism, nevertheless it chose to arrive at a tax factor of 38.9% through a formula which had no relevant foundation in the record. We are unable to find any basis in the evidence for the utilization of an artificial book formula derived from SEC regulations. In fact the testimony was uncontradicted that such a formula is wholly inappropriate for consideration in rate applications. For that reason we cannot accept the factfindings of the administrative agency on the traditional ground that it is supported by substantial evidence in the record. See *Mayflower Securities v. Bureau of Securities,* 64 *N. J.* 85, 92–93 (1973); *Clover Hill Swimming Club v. Goldsboro,* 47 *N. J.* 25, 36 (1966). See also, *Jaffe, Judicial Control of Administrative Action,* at 595–623 (1965).

■ Moreover, the findings and conclusions of the Board and hearing examiner are devoid of any analysis reflecting the application of their expertise in turning to the SEC formula as a rational basis for their calculations. The grounds upon which an administrative agency acts, whether it be in terms of the evidence in the case or the knowledge or expertise of the Board, must be "clearly disclosed and adequately sustained." *In re Plainfield-Union Water Co.,* 11 *N. J.* 382, 396 (1953); *In re Plainfield-Union Water Co.,* 57 *N. J. Super.* 158, 174 (App. Div. 1959).

In view of the foregoing, we are constrained on this aspect of the case to remand for the formulation of a rate structure based on a reasonable tax deduction through precise findings and conclusions which will delineate not only the fact determinations but the reasoning for the application of a formula or other method of calculation within the ambit of the Board's expertise in arriving at a solution. Additional testimony may also be submitted by any of the parties or the Board. Of course, full disclosure should be made and opportunity be given to meet any facts, reasoning or conclusions by countervailing evidence or argument.

Since the matter is remanded we deem it appropriate, not only for this case, but also for future guidance of the Board, to express our view on the other facet of this appeal, namely, the appropriate effective date of any rate increase which may be allowed.

Lambertville filed its petition on June 28, 1974 requesting revised rates to be effective on August 1, 1974. On July 19 the Board issued an order pursuant to *N. J. S. A.* 48:2–21(d) ordering a suspension of the increase until December 1, 1974. Thereafter, on November 21, 1974, pursuant to the right granted by the same statute, it extended the suspension for an additional period of four months until April 1, 1975.

The final order of the Board after hearing and rehearing was dated March 25, 1976 and became effective on May 1, 1976.

Lambertville contends that the effective date of the rate increase should relate back to April 1, 1975, which is the outside date pursuant to the two four-month suspensions authorized by *N. J. S. A.* 48:2–21(d).

In our opinion, the Legislature contemplated that the Board would be allowed a maximum period of eight months for the conduct of the hearing and decision, with that period being designated as the reasonable time during which the *status quo* should be maintained. Unfortunately, many cases cannot be concluded within that period of time and a de-

cision at a later date does not affect the validity or vitality of the Board's determination.

However, the statutory pattern dictates that an applicant is entitled to an increase, if approved, as of the date requested in the application based upon the financial data set forth therein and as supplemented by evidence at a hearing. If the Board finds that it is unable to resolve the issue shortly, it may suspend the effective date of any change in rates by suspension orders "not exceeding" a total of eight months.

█ In the absence of waiver or voluntary agreement (*N. J. S. A.* 48:2–21.3), the effective date of an allowable increase cannot be held in abeyance beyond eight months regardless of the period consumed by hearings and decision. The statute is clear and mandatory.

The record herein reflects that the statutory suspensions expired on April 1, 1975. We do note, however, that counsel for Lambertville consented in writing to a 30-day extension of the suspension period, thereby waiving its right to the controlling date of April 1 and authorizing the suspension until May 1, 1975.

Respondent and the Public Advocate urge that such retroactive effect is rejected by the opinion of our Supreme Court in *In re New Jersey Power & Light Co.,* 15 *N. J.* 82 (1954). The court in that case was concerned with the effort of the utility to recoup by surcharging its customers for "deficits in operations by temporary surcharges added to its regular rates." 15 *N. J.* at 86. See also, *In re Intrastate Industrial Sand Rates,* 66 *N. J.* 12, 23 (1974). The issue related to the propriety of a surcharge upon reasonable rates established by the Board in order to compensate the utility for past losses. The application dealt with surcharges for service rendered prior to its filing.

A related problem in utility rate cases is that which has been designated as "regulatory lag" — namely, the loss of proper earnings claimed by the utility because of spiralling inflationary costs between the time that a petition for a rate

increase is filed and the rate relief becomes effective. See *State v. N. J. Bell Tel. Co.*, 30 *N. J.* 16, 28 ,(1959); 66 *Harv. L. Rev.* 1274 (1953).

Where the utility seeks a surcharge for past deficits or an additional increase because of inflationary costs pending regulatory lag, the legislative pattern does not permit such relief.' *In re New Jersey Power & Light Co. supra,* 15 *N. J.* 82; *State v. N. J. Bell Tel. Co., supra.* However, the limitation in these situations is distinguishable from the question whether the determination of the Board granting an increase shall be effective as of the date of judgment (or appellate decision) rather than the date established by the petition as extended by the statutory suspensions allowed by *N. J. S. A.* 48:2–21(d).

In our view, the legislative provisions for a maximum suspension period of eight months is correlated with the effective date of any increase which may be granted subsequent thereto. Otherwise, the clear language would have no significance. The mere fact that the Legislature granted to the Board the power to suspend increases for a total of eight months is a recognition that in the absence of such formal suspension, rate increases become effective as of the date requested in the petition. The suspension period therefore is a legislative recognition of the reasonable time allotted to the Board to resolve the issues, and an appropriate point at which any rate increase should in fairness become operative.

The Court of Errors and Appeals succinctly outlined the statutory pattern of the forerunner of the present statute (*L.* 1911, *c.* 195, § 16'), which provided for a three-month suspension period, in the following:

By the seventeenth section, item *g* [*h*], whenever a public utility corporation shall file a schedule exhibiting an increase of an existing rate the board is authorized, either upon the complaint of the party affected by the increase or on its own initiative, to hear and determine whether the increase is just and reasonable; and it is given power, pending such hearing and determination, to suspend

the increased rate for a period not exceeding three months. The situation then created by the statute is this: When a public utility company increases its rate and files a schedule thereof with the board the increased rate goes into effect upon the date specified in the schedule, unless the board determines to investigate the propriety of the proposed increase, and makes an order suspending the proposed new rate. When the board takes this course the new rate does not become effective until the expiration of the time limited in that order. But at the expiration of that period the scheduled rate becomes automatically effective. [*Hackensack Water Co. v. Pub. Utility Bd.*, 96 *N. J. L.* 184, 188 (E. & A. 1921)].[2]

That analysis is still viable and controlling under the circumstances involved herein, except that under our interpretation of the current statute a proposed rate increase does not go into effect automatically at the expiration of the suspension period. If and when an increase is granted thereafter by the Board, such increase is retrospectively effective as of the end of the suspension period or any voluntary extension thereof.

Furthermore, we are satisfied that the alternative method of adjusting rates during the pendency of hearing by negotiation and agreement under *N. J. S. A.* 48:2–21.1 does not affect our conclusion.

The matter is therefore remanded for further consideration by the Board in conformity with this opinion. Any increase granted to the applicant shall be effective as of May 1, 1975.

We do not retain jurisdiction.

---

[2]Note that this earlier *Hackensack Water Co.* opinion is not the opinion of the same title reported in 98 *N. J. L.* 41 (Sup. Ct. 1922), aff'd 100 *N. J. L.* 177 (E. & A. 1924), which was overruled by *In re New Jersey Power & Light Co., supra*, 15 *N. J.* 82.