**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2552-23

IN THE MATTER OF
TROOPER MICHAEL R.
TRAVIS #7349.

_____

Submitted May 19, 2025 – Decided June 25, 2025

Before Judges Gummer and Jablonski.

On appeal from the New Jersey Division of State Police, Docket No. 2023-0340.

Chamlin Uliano & Walsh, attorneys for appellant Trooper Michael R. Travis (Charles J. Uliano, of counsel and on the briefs; Andrew T. Walsh, on the briefs).

Matthew J. Platkin, Attorney General, attorney for respondent New Jersey Division of State Police (Donna Arons, Assistant Attorney General, of counsel; Gary W. Baldwin, Deputy Attorney General, on the brief).

PER CURIAM

In an April 8, 2024 final agency decision, the Superintendent of the New

Jersey State Police ("NJSP") determined petitioner violated the terms of a

"Last Chance Agreement" ("LCA") and consequently terminated petitioner's employment and ordered his removal from the NJSP.  Petitioner appeals that decision.

Petitioner contends the termination decision was substantively incorrect because it lacked detail and was procedurally infirm because it was filed outside the limitations period set forth in N.J.S.A. 53:1-33.[1]  We disagree and conclude the Superintendent properly enforced the LCA.   Therefore, we affirm.

I.

On May 24, 2013, petitioner, an off-duty New Jersey State Trooper, was involved in an alcohol-influenced motor-vehicle accident.  While intoxicated, he allegedly "purposely and repeatedly struck a parked vehicle."  Alcotest results revealed petitioner's blood alcohol content ("BAC") was .23%. Consequently, the Ocean Township police cited him with driving while intoxicated ("DWI"), N.J.S.A. 39:4-50, reckless driving, N.J.S.A. 39:4-96, and

---

[1] N.J.S.A. 53:1-33 provides that a complaint against a State Police trooper for violations of internal rules must be filed within forty-five days of the complainant obtaining sufficient information to support the claim. However, this time limit does not apply if the violation is part of or linked to an ongoing criminal investigation. Under those circumstances, the applicable time limit begins the day after the criminal investigation has reached disposition.

careless driving, N.J.S.A. 30:4-97. They also charged him with criminal mischief, N.J.S.A. 2C:17-3(b)(2). On September 26, 2013, petitioner pled guilty to careless driving. He was fined and his driving privileges were suspended for ninety days. The DWI and reckless driving charges were dismissed. A departmental investigation followed.

After petitioner admitted that he had consumed alcohol and was "highly intoxicated" when he operated his motor vehicle and struck the parked car, the NJSP brought several departmental charges accusing him of violating portions of the Rules and Regulations of the Division of State Police ("Division").

With the assistance of counsel for both parties, the Division and petitioner negotiated and entered into a "negotiated voluntary plea agreement general disciplinary matter" under which petitioner pled guilty to the Division's accusations. In return, petitioner was not terminated but instead received a three-point demotion for three years and a 240-day job suspension, which included a "time served" component and was lifted sixteen days after petitioner entered into this agreement. Petitioner was also required to submit to an alcohol management treatment assessment and to comply with its recommendations, including routine drug and alcohol testing for the remainder of his employment.

At the heart of this "final and mutually binding" agreement was an unambiguous clause that provided: "The agreement shall be considered a '[LCA].' Should any new allegation of misconduct [be] against [petitioner] which is deemed by the Superintendent to be significant enough to warrant your termination, you will be subject to <u>Summary Dismissal</u> from the Division." (Emphasis in original).

Clause five of the agreement requested petitioner's answers to these questions:

> Q. Do you thoroughly understand all I have read to you?
>
> Answer: Yes
>
> Q. Have you had sufficient time to converse with your assigned counsel and/or union representative regarding the agreement in total?
>
> Answer: Yes
>
> Q. Do you understand the charge(s) and specifications(s) with which you have been charged?
>
> Answer: Yes
>
> Q. Has anyone made any other promises to you regarding this Guilty Plea which are not memorialized in this written document?
>
> Answer: No

4

Q. Has anyone forced you to enter this plea of guilty?

Answer: No

Q. Do you now enter a VOLUNTARY PLEA OF GUILTY to the Charge[s] and Specification(s), with which you have been charged?

Answer: Yes

Q. [Petitioner], if you understand the proposed discipline which I have just outlined for you, please acknowledge same by signing where indicated on the Negotiated Plea Agreement Form.

Petitioner answered each question in writing, initialed each response, and signed the entire agreement. His attorney and union representative executed the agreement along with the deputy attorney general representing the Division and representatives of the Division's Office of Professional Standards ("OPS").

Almost ten years passed. On June 15, 2023, petitioner was charged with leaving the scene of an accident involving personal injury, failure to report an accident, careless driving, and use of a hand-held device following another incident in Ocean Township. Approximately three months later, petitioner pled guilty to the use of a cell phone and failing to report an accident. The State dismissed the remainder of the charges.

A-2552-23

Three months after resolution of those charges, on December 13, 2023, petitioner was interviewed by the OPS.

On April 8, 2024, the Superintendent terminated petitioner under the LCA in a brief letter. The Superintendent wrote, in pertinent part:

> Having thoroughly reviewed this matter, I am satisfied the Division has obtained sufficient information that proves you have violated the terms of a negotiated "Last Chance Plea Agreement" executed on January 7, 2014. Therefore, as a result of a Summary Dismissal, be advised that as of this date, you have been terminated from employment and will be immediately removed from the Division's Roster.

The next day, petitioner's union, the State Troopers' Fraternal Association of New Jersey, Inc. (the "Union"), grieved the Superintendent's lack of substantiation of the charges that allegedly triggered the termination provisions under the LCA. The Union requested petitioner "be issued the sustained charges and specifications of those charges, which served as the basis for the Division to execute the provisions in the '[LCA].'"

In response, the Superintendent informed petitioner and the Union that he would not conduct a hearing and concluded that this written response "will constitute my response to this grievance." The Superintendent acknowledged the execution of the voluntary plea agreement in 2014 and noted that it included the LCA. The Superintendent also highlighted that the agreement

"allows the Superintendent to summarily dismiss the involved member should any new allegation be substantiated against the member which is deemed by the Superintendent to be serious enough to warrant the member's termination." The Superintendent further recognized petitioner understood the terms of the agreement both orally and in writing.

The Superintendent then concluded:

> As a result of OPS Case # 2023-0340, [petitioner] was substantiated for the following allegations: assault by auto, careless driving, use of cell phone while driving, failure to report [a motor vehicle] accident, failure to notify the Division of information to which the Division would take cognizance, leaving the scene of [a motor-vehicle accident], failure to take appropriate police action, off-duty [motor-vehicle accident] personal vehicle (guilty in court), and intentionally providing false information during a misconduct investigation.
>
> [(Capitalization modified).]

Premised on these "substantiated" allegations, the Superintendent "chose to act on the aforementioned LCA and terminate the member's employment effective April 8, 2024."

II.

Our review of agency determinations is both limited and deferential Allstars Auto Grp., Inc. v. N.J. Motor Vehicle Comm'n, 234 N.J. 150, 157

(2018). Therefore, we "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of Newark v. Nat. Res. Council in Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). That presumption is particularly strong when an agency deals with specialized matters within its area of expertise. See Newark, 82 N.J. at 540. Similarly, we do not substitute our judgment for that of the agency and, if there is any argument supporting the agency action, it must be affirmed. See Clowes v. Terminix Int'l, Inc., 109 N.J. 575, 588 (1988).

If we find "sufficient credible evidence in the record to support the agency's conclusions, [we] must uphold those findings even if [we] believe[] that [we] would have reached a different result." In re Taylor, 158 N.J. 644, 657 (1999). We will reverse the "'decision of the administrative agency only if it is arbitrary, capricious[,] or unreasonable or it is not supported by substantial credible evidence in the record as a whole.'" Ibid. (quoting Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980)).

III.

It is axiomatic that as a matter of public policy, our courts favor enforcement of settlement agreements. Brundage v. Est. of Carambio, 195

8

N.J. 575, 601 (2008). This policy acknowledges the "notion that the parties to a dispute are in the best position to determine how to resolve a contested matter in a way which is least disadvantageous to everyone." Jennings v. Reed, 381 N.J. Super. 217, 226-27 (App. Div. 2005) (quoting Peskin v. Peskin, 271 N.J. Super. 261, 275 (App. Div. 1994)). Consequently, courts "'strain to give effect to the terms of a settlement agreement wherever possible.'" Id. at 227 (quoting Dep't of Pub. Advocate, Div. of Rate Counsel v. N.J. Bd. of Pub. Util., 206 N.J. Super. 523, 528 (App. Div. 1985)). Once the parties agree on the essential terms of the agreement and "manifest an intention to be bound by those terms, they have created an enforceable contract." Weichert Co. Realtors v. Ryan, 128 N.J. 427, 435 (1992).

"An agreement to settle a lawsuit is a contract which, like all contracts, may be freely entered into and which a court, absent a demonstration of 'fraud or other compelling circumstances' should honor and enforce as it does other contracts." Pascarella v. Bruck, 190 N.J. Super. 118, 124-25 (App. Div. 1983) (quoting Honeywell v. Bubb, 130 N.J. Super. 130, 136 (App. Div. 1974)).

There is no dispute that the LCA is an enforceable contract because the parties to it, all represented by counsel, agreed to the essential elements of the agreement. Central to this agreement was the characterization of it as a "Last

9

Chance Agreement."  In addition to the more general conditions of the agreement, the most obvious and specific condition reflected the core of the contract:  "Should any new allegation of misconduct be substantiated against you which is deemed by the Superintendent to be significant enough to warrant [petitioner's] termination, you will be subject to <u>Summary Dismissal</u> from the Division." (Emphasis in original).  Despite petitioner's argument that the agreement's highlighted term is undefined or ambiguous, the phrase leaves nothing to the imagination about petitioner's responsibility to maintain a law-abiding life, personally and professionally, in order to continue his employment.  Similarly, the plain meaning of the term "summary dismissal" leaves no doubt about the immediate adverse consequences that would follow from "any" future infractions.  Finally, petitioner acknowledged orally and in writing that he "thoroughly understood" each of the terms of the agreement. We do not find either the contract or any of its terms ambiguous.

On this premise, we consider petitioner's two-pronged argument that the Superintendent's decision should be reversed.

IV.

First, petitioner argues that the Superintendent's termination decision was arbitrary, capricious, and unreasonable because the final decision by the

Superintendent lacked findings of fact to support the termination decision. We disagree.

To assess the validly of an administrative agency action, sufficient information must be presented for our review to be fruitful. "[A]dministrative agencies must 'articulate the standards and principles that govern their discretionary decisions in as much detail as possible.'" Matter of the Application for Medicinal Marijuana Alternative Treatment Ctr. for Pangaea Health and Wellness, LLC, 465 N.J. Super. 343, 384 (App. Div. 2020) (quoting Van Holten Grp. v. Elizabethtown Water Co., 121 N.J. 48, 67 (1990)). Agencies must "make findings 'to the extent required by statute or regulation and provide notice of those [findings] to all interested parties.'" Medicinal Marijuana, 465 N.J. at 384 (alteration in original) (quoting Matter of Issuance of a Permit by the Dep't of Env't. Prot. to Ciba-Geigy Corp., 120 N.J. 164, 173 (1990)). "Bald assertions" of ultimate agency decisions that are "devoid of any analysis" are less than helpful when we are called on to assess the propriety of those decisions. See Green v. State Health Benefits Comm'n, 373 N.J. Super. 408, 416 (App. Div. 2004); Lambertville Water Co. v. N.J. Bd. of Pub. Util. Comm'rs, 153 N.J. Super. 24, 29 (App. Div. 1977), rev'd on other grounds, 79 N.J. 449 (1979). "[A]n agency decision must reveal enough of the

agency's thought process so that a reviewing court may determine 'without question or doubt what facts and factors led to the ultimate conclusions reached." Medicinal Marijuana, 465 N.J. at 385 (quoting Application of Howard Sav. Inst. of Newark, 32 N.J. 29, 53 (1960)).

Admittedly, the Superintendent's final agency decision lacks factual findings and recites his conclusion. There is, nevertheless, substantial evidence contained in the record to justify the Superintendent's decision, notably in his response to petitioner's Union grievance. Although the better practice would be to include the factual justification for a termination decision in a single document, we discern no error in the Superintendent's ultimate decision because the facts to justify the decision are found in the record before us.

The 2023 event that initiated the Superintendent's termination assessment spanned a variety of offenses charged — all of which speak directly to offenses for which petitioner would, no doubt, be investigated and for which the State might ultimately prosecute. In addition to the motor vehicle offenses for which he was convicted, which included failing to report an accident and operating a motor vehicle while using a cell phone, petitioner

12

was also accused of several other departmental and criminal infractions that according to the Superintendent were administratively substantiated including:

> Assault by Auto, Careless Driving, . . . Failure to Notify the Division of Information to Which the Division Would Take Cognizance, . . . Failure to Take Appropriate Police Action, Off-Duty [motor vehicle accident] Personal Vehicle . . ., and Intentionally Providing False Information During a Misconduct Investigation.

The LCA does not limit the nature of the predicate offenses to originate the termination scrutiny. Rather it requires only the substantiation of "<u>any</u> new allegation of misconduct." (Emphasis added). We conclude, therefore, that given the new substantiated allegations of misconduct having been determined to be "substantial," the Superintendent did not act arbitrarily, capriciously, nor unreasonably to dismiss petitioner from the NJSP according to the 2014 agreement.

V.

Second, petitioner contends N.J.S.A. 53:1-33 bars this action. We disagree.

In relevant part, N.J.S.A. 53:1-33 provides:

> A complaint charging a violation of the internal rules and regulations established for the conduct of the State Police shall be filed to later than the 45th day after the date on which the person filing the complaint obtained

13

sufficient information to file the matter upon which the complaint is based . . . . The applicable time limit shall not apply if an investigation of an officer or trooper for a violation of the internal rules or regulations of the law enforcement unit is included directly or indirectly with a concurrent investigation of that person for a violation of the criminal laws of this State. The applicable time limit shall begin on the day after the disposition of the criminal investigation.

If petitioner were exposed to the termination of his employment and removal from the NJSP as a result of the 2023 incident alone, we might agree with his argument that the statute may bar the application because the temporal requirements were not satisfied. However, in this case, the 2023 incident activated only the termination clause under the LCA rather than any separate or independent grounds for removal.

These infractions serve as the jurisdictional triggers under the LCA to permit the Superintendent's assessment of the termination inquiry under the terms of the agreement that petitioner negotiated. We find, therefore, that the statute does not bar the Superintendent's termination decision, and a separate complaint filed within the requisite forty-five-day time period was not necessary.

14

## VI.

To the extent we have not addressed petitioner's remaining arguments, we find they lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M. C. Harley*

Clerk of the Appellate Division